UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL HENRY,

    Plaintiff,

    v.

HOME DEPOT U.S.A., INC,

    Defendant.

Case No. 14-cv-04858-JST

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: ECF No. 29

Before the Court is Defendant Home Depot U.S.A., Inc.'s Motion for Partial Summary Judgment. ECF No. 29. The Court will deny the motion.

**I.     BACKGROUND**

Plaintiff Michael Henry brings this putative class action against Defendant Home Depot U.S.A., Inc., for various violations of California's Labor and Business and Professions Codes. See ECF No. 1-2, Bertki Decl., Ex. A, Compl.[1] Henry worked as an hourly store employee of Home Depot between March 2004 and September 2013. Compl. ¶ 5. His Complaint alleges causes of action under California state law for: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly and overtime wages, (4) failure to provide accurate written wage statements, (5) failure to pay all wages due at termination, (6) unfair competition, and (7) civil penalties under the Private Attorneys General Act. Id. ¶¶ 19–104.

Henry proposes a number of classes and subclasses, including an "hourly employee class" consisting of "all persons employed by Defendants in hourly or non-exempt positions in California during the Relevant Time Period who worked a shift past midnight in which the total aggregate

---

[1] Henry originally filed his Complaint on September 18, 2014 in the Superior Court of California, County of Alameda. Id. On October 31, 2014, Home Depot removed the action to federal court pursuant to the Class Action Fairness Act. 28 U.S.C. § 1332(d); ECF No. 1.

number of hours for that shift exceeded 8 hours." Id. ¶ 11.

On September 10, 2015, Home Depot filed the instant motion for partial summary judgment. ECF No. 29. On November 5, 2015, Henry filed his opposition. ECF No. 32. On November 12, 2015, Home Depot filed its reply. ECF No.33. The Court heard oral argument on December 10, 2015.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." Id. In deciding a summary judgment motion, the court draws all reasonable factual inferences in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Id.

## III.  DISCUSSION

Home Depot brings this motion for partial summary judgment to address a single issue: whether its definition of workday violates the California Labor Code, which requires overtime payment for work in excess of eight hours in a workday. See ECF No. 29 at 1. Home Depot argues that its workday designation is not designed primarily to evade overtime compensation, and accordingly, it is entitled to judgment as a matter of law on Henry's overtime claim.

Under the California Labor Code, "eight hours of labor constitutes a day's work." CAL. LAB. CODE § 510(a). When an employee works more than eight hours in one "workday," more than 40 hours in one "workweek," or for eight or fewer hours on the seventh day of the workweek, the employee is entitled to receive overtime compensation at one and one-half the employee's

regular rate of pay.[2]  Id.  A "workday" is defined as "any consecutive 24-hour period commencing at the same time each calendar day."  Id. § 500(a).

The California Labor Code "affords an employer significant flexibility in the designation of a workweek" and workday.  Cummings v. Starbucks Corp., No. CV 12-06345-MWF FFMX, 2013 WL 2096435, at *4 (C.D. Cal. May 14, 2013) (citing Seymore v. Metson Marine, Inc., 194 Cal. App. 4th 361, 370 (2011).  However, the employer's designation must not be designed to evade paying overtime.  Id.; see also Jakosalem v. Air Serv Corp., No. 13-CV-05944-SI, 2014 WL 7146672 at *4 (N.D. Cal. Dec. 15, 2014).  "An employer may not engage in subterfuge or artifice designed to evade the overtime laws."  Huntington Mem'l Hosp. v. Sup. Ct., 131 Cal. App. 4th 893, 910 (2005).

The California Labor Commission's Division of Labor Standards Enforcement ("DLSE") has interpreted this section to mean:

> A workday is a consecutive 24-hour period beginning at the same time each calendar day, but it may begin at any time of day.  The beginning of an employee's workday need not coincide with the beginning of that employee's shift, and an employer may establish different workdays for different shifts.  However, once a workday is established it may be changed only if the change is intended to be permanent and the change is not designed to evade overtime obligations.  Daily overtime is due based on the hours worked in any given workday; and, of course, the averaging of hours over two or more workdays is not allowed.

DLSE Enforcement Policies and Interpretations Manual ("DLSE Manual") § 48.1.2 (2002).[3]

Home Depot's workday begins at begins at 12:00 a.m. and ends at 11:59 p.m.  ECF No. 29-5, Barnaby Decl., Ex. A.  This definition has been in place since at least September 2010 and applies to all non-exempt employees in California.  ECF No. 29-4, Barnaby Decl. ¶ 5.

Henry contends that he and the "hourly employee class" were not paid overtime despite

---

[2] After eight hours on the seventh day of the workweek, the employee is entitled to double-time. Id.

[3] The DLSE Manual's interpretation of Section 500, to mean that the start of an employee's workday need not coincide with the start of the employee's shift, is accorded respect but is non-binding.  Bonnell v. Med Bd. of Cal., 31 Cal. 4th 1255, 1264 (2003) ("while agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts, agency interpretations are not binding or . . . authoritative.  Courts must, in short, independently judge the text of [a] statute." (internal citations and quotation marks omitted)).

working more than eight continuous hours. ECF No. 1-2, Bertki Decl., Ex. A, Compl. ¶¶ 11, 59. This occurred when he worked shifts longer than eight hours that crossed over midnight, thus spanning two calendar days. Id.; ECF No. 32 at 7. Home Depot has submitted evidence that over "20,000 Home Depot's hourly employees in California have worked at least one such shift" between September 18, 2010 and September 15, 2014.[4] ECF No. 1 at 3; ECF No. 1-5, Anderson Decl. ¶ 7.[5] Henry contends that Home Depot should be required to define its workday to begin at the same time as each employee's shift. ECF No. 32 at 6.

Home Depot responds that it owes Henry and the overtime class no additional compensation because its definition of workday is permitted under California law. ECF No. 29 at 5. Home Depot argues that based on the plain language of California's Labor Code, it is permitted to define its workday to begin at 12:00 a.m. and end at 11:59 p.m. Having done so, it is not required to pay its employees overtime compensation when they work more than eight hours across two calendar days, so long as no more than eight hours are worked within the same calendar day.

An example illustrates the difference in effect between these two approaches. Assume that a Home Depot employee begins her shift at 8:00 p.m. on Wednesday and ends her shift at 5:00 a.m. on Thursday. Under Henry's interpretation, she is entitled to one hour of overtime (for work between 4:00 a.m. and 5:00 a.m.). Under Home Depot's interpretation, she is not entitled to any overtime pay because her shift extended across two workdays (the first workday from 8:00 p.m. to

---

[4] Henry argues that because Home Depot identified the employees through September of 2014, the number of Home Depot employees affected by the workday designation is likely higher at this time.

[5] Portions of the Anderson Declaration contain blanks where the relevant data should be. In its Notice of Removal, however, Home Depot provides the relevant information, and the parties have relied on Home Depot's assertions. Compare ECF No. 1-5 at 3 (Anderson Decl.) (stating "Between September 18, 2010 and September 15, 2014, at least _____ of Home Depot's nonexempt employees in California worked at least one shift of longer than 8 hours that began before midnight on one calendar day and ended after midnight on the next calendar day") and ECF No. 1 at 3 (Notice of Removal) (stating "Since September 18, 2014, more than 20,000 of Home Depot's hourly employees in California have worked at least one such shift" and citing the Anderson Declaration at ¶ 7). The Court does likewise here.

11:59 p.m. and the second workday from 12:00 a.m. to 5:00 p.m.).[6]

In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609 (N.D. Cal. 2007) supports Henry's position.  In Wal-Mart, plaintiffs alleged that Wal-Mart designated a midnight-to-midnight work day and that they did not receive overtime wages for hours worked in excess of eight, where hours in their shifts fell before and after midnight.  Id. at 616.  Wal-Mart moved to dismiss the claim, arguing that its practices complied with the Labor Code.  Id.  The court held that plaintiffs had properly alleged a claim.  Id. at 618.  The court declined to give deference to the DLSE's interpretation of the Labor Code and emphasized that the Labor Code "bluntly states: 'eight hours of labor constitutes a day's work.'"  Id. at 617 (citing CAL. LAB. CODE § 510(a)).  The court stressed this portion of the statute to conclude that it "clearly conveys the legislature's intent that, other than in the case of specific enumerated exceptions, a shift of more than eight hours of consecutive work qualifies for overtime pay."  Id.  The court further explained that "California's overtime laws are remedial and are to be construed so as to promote employee protection."  Id.  Concerned that Wal-Mart defined the workday to "circumvent the overtime pay provisions of the Labor Code," the court held that the plaintiffs properly alleged a claim for failure to overtime.  Id. at 618.

More recently, however, Wal-Mart's interpretation of section 510 was rejected within this district by Jakosalem, supra, 2014 WL 7146672.  The court in that case noted that while the first sentence of Section 510(a) establishes the length of a "day's work" as eight hours, "the second sentence establishes that overtime pay is due only where work in excess of eight hours (a day's work) is completed in a single workday."  Id. at *4.   Thus, the court found, "[r]eading these two sentences together suggests that the designation of the workday bears at least some relation to an employee's entitlement to overtime."  The court rejected Wal-Mart's shift-based interpretation of the statute, finding that it "risk[ed] rendering the second sentence of Section 510(a) mere surplusage, and moreover reads in a shift-based overtime requirement for which there is no explicit statutory support."  Id.  This Court agrees with the reasoning of the Jakosalem court,

---

[6] Henry points out that Home Depot's position could result in an employee working at many as 16 continuous hours, from 4 p.m. to 8 a.m., without receiving overtime pay.  See ECF No. 32 at 5.

adopts its holding here, and rejects Henry's argument that employers are required in all instances to define each employee's workday to begin with that employee's shift.

Although the Court rejects Henry's statutory interpretation, the Court must still address the question of whether Home Depot has shown as a matter of law that its workday was not designed "primarily to evade overtime compensation." Seymore, 194 Cal. App. 4th 370. The burden is on Home Depot to make this showing. Id. at 370–71. Home Depot acknowledges that it may not establish a definition of workday where the designation's primary purpose is to reduce the overtime pay of its employees. ECF No. 29 at 10.

Home Depot submitted no direct evidence regarding the purpose behind its workday definition. Instead, it submitted payroll records showing the percentage of Home Depot employee shifts occurring within the designated workday, and asked the Court to infer that because "Home Depot's workday definition coincides with . . . the shifts of over 90 percent of its California employees," "it is clear that Home Depot's workday was not defined to evade paying overtime." ECF No. 29 at 3. This evidence, and the reasonable inferences to be drawn from it, do not point in only one direction. Home Depot's Notice of Removal states that at least 20,000 of its non-exempt California employees worked at least one shift longer than 8 hours that crossed midnight, ECF No. 1 ¶ 6, for a total of 2,784,290 shifts. ECF No. 29-1, Anderson Decl. ¶ 7. 1,084,842 overnight shifts were in excess of eight hours. ECF No. 33-1, Anderson Supplemental Decl. ¶ 4. A reasonable jury might conclude, contrary to Home Depot's assertions, that its workday definition was designed to avoid paying these employees overtime.[7]

The other evidence in the record also does not support Home Depot's position. In opposition to the motion, Plaintiff submitted excerpts from the deposition of Christine Barnaby, Home Depot's Director of Human Resources Operations. When asked why Home Depot had adopted the 12:00 a.m. to 11:59 p.m. workday, she responded as follows:

> So we follow the standard of what a calendar day is. For the retail business, it's a typical calendar day to follow what's – best meets our business needs of the way we staff our stores, to meet our

---

[7] Home Depot's expert was not asked to calculate the amount of overtime that class members would be entitled to if all hours over eight in a shift were compensated. ECF No. 32-4 at 6.

> customer demand of how we need to have our associates on the floor that best suits how we define a day.

ECF No. 32-2, Ex. A, Barnaby Depo. at 4. While Home Depot's precise policy goals are somewhat difficult to discern from this testimony, it suggests at a minimum that the beginning of the calendar day bears some relationship to Home Depot's "customer demand" and "when [Home Depot] need[s] to have [its] associates on the floor." Yet Home Depot has submitted no evidence to support the asserted relationship between the beginning of the calendar day and customer demand. In fact, as Defendant's counsel acknowledged during oral argument, Home Depot stores are not open 24 hours per day, so when the Home Depot workday begins, there are no customers in its stores, and none will arrive for several hours.

Finally, Henry has presented evidence from his managers that Home Depot implemented the midnight day divide to avoid paying overtime. See ECF No. 32-5, Henry Decl. ¶¶ 3–5.[8] Henry declares that on several occasions when he worked overnight shifts that spanned two calendar days, he was not scheduled to work on the second day or his supervisors told him to work only a few hours that day. Id. ¶ 5. Henry's supervisors also told him that this was to avoid overtime accrual. Id. Although Home Depot points out that only three percent of Henry's shifts cross the midnight day divide, Henry's declaration asserts that for shifts that spanned two calendar days, supervisors either did not schedule him to work the following day or told him to minimize his hours on the second calendar day. While these statements are susceptible to multiple inferences, some of which are favorable to Home Depot, a reasonable jury could also consider these statements as evidence that Home Depot designed its workday to avoid the payment of overtime.

Home Depot also argues that its workday coincides with its employees' work schedule,

---

[8] Home Depot objects to managers' statements on hearsay grounds. ECF No. 33 at 8 n.6. The Court overrules the objection. Statements made by store supervisors to Henry fall within the "admission of a party-opponent" exception as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED. R. EVID. 801(d)(2)(D). Store supervisors are "agent(s) or servant(s)" of Home Depot, and statements concerning employee work schedules and overtime accrual would be statements "concerning a matter within the scope of the agency or employment." See Brewer v. Kmart Corp., No. 5:08-CV-1914, 2010 WL 2346366, at *4 n.5 (C.D. Cal. June 7, 2010) (considering the statements regarding employee pay made by defendant's store manager because the statements are admissions of a party-opponent).

7

1   citing Cummings vs. Starbucks Corp. in support.  ECF No. 29 at 11.  In Cummings, Starbucks
2   began its workday at 4:00 a.m.  2013 WL 2096435, at *4.  Starbucks defended its workday
3   definition on the ground that the first shifts in most of its California stores started at 4:00 a.m. or
4   4:30 a.m., and most stores opened at 5:00 a.m.  Id.  Although the plaintiff never worked a shift
5   longer than eight hours, she argued that she was entitled to overtime because she had worked eight
6   hours and twenty-nine minutes over two shifts in one calendar day.  Id.  The plaintiff pointed out
7   that had Starbucks defined the workday to begin at 12:00 a.m., rather than 4:00 a.m., she would
8   have been entitled to overtime pay.  Id.  The Cummings court held that Starbucks had satisfied its
9   burden of showing a legitimate business purpose for its workweek and workday designations
10  because the designations coincided with its employees' work schedules and the opening times of
11  its stores.  Id.  The court also noted that the record provided no indication that Starbucks' workday
12  definition was designed to evade overtime compensation.  Id.
13       Cummings is not helpful to Home Depot.  Central to the holding in that case was the fact
14  that Starbucks' workday designation fit closely with its stores' opening hours and the beginning of
15  its employees' shifts.  Notwithstanding the testimony of its Human Resources Director, Home
16  Depot has not made a similar showing here, and unlike Starbucks, it advances no affirmative
17  justification for starting its workday at 12:00 a.m.
18       In short, the Court cannot conclude as a matter of law that Home Depot's workday
19  designation was not "designed to evade the overtime laws."  There are disputed issues of material
20  fact, and the evidence before the Court gives rise to competing inferences.  D. Brock Hornby,
21  Summary Judgment Without Illusions, 13 Green Bag 2d 273, 287 (2010) ("Judges should be slow
22  to take inference questions away from juries[.]").  Home Depot is not entitled to summary
23  judgment on Henry's overtime claim.[9]
24  / / /
25  / / /
26  / / /
27
28  [9] Because the Court denies Home Depot's motion, it does not address Plaintiff's remaining
    arguments.

8

**CONCLUSION**

For the reasons stated above, the Court denies Home Depot's motion for partial summary judgment.

IT IS SO ORDERED.

Dated: January 4, 2016

_____
JON S. TIGAR
United States District Judge